## CHARLES B. WELLINGTON

*vs.*

## MONROE TROTTING PARK COMPANY.

## Kennebec.     Opinion July 21, 1897.

*Horse-Race.   Gaming.   Fraudulent Award.   Payment.*

In an action against the "Monroe Trotting Park Company," to recover an unpaid trotting premium, evidence of the existence of the "Waldo and Penobscot Society" has no tendency to rebut the plaintiff's claim that the first named corporation is liable.

In an action to recover an unpaid trotting premium claimed to have been won by the plaintiff's horse in a horse-race conducted by the defendant, *held;* that the judges constituted the tribunal to which the parties submitted when they entered their horses for the race; and by their decision, if honestly given, the parties are bound.

The plaintiff will not be debarred from recovering a premium which his horse has clearly won when the judges, through the fraud of one of their number, are led to award the premium to another horse.

In a final heat between two horses, at about dark, and when the stand was crowded, it appeared that the three judges did not meet in consultation; but that one of them assumed to communicate between the other two, and falsely informed each that the other and himself had decided to give the race to a horse which, in fact, had not won it; and that each of these two judges was thereby led to believe that a majority of the three had decided in favor of that horse; and relying upon the information so received, each submitted to the supposed majority, and therefore a public decision was accordingly announced.

*Held;* that such conduct on the part of the judge who gave the false information to the other two judges was fraudulent; and that a decision so procured is not a bar to an action to recover the premium by the owner of the horse which actually won the race.

The defendant sent the plaintiff a check for thirty dollars for second money in this race. The premium offered was $200, and the plaintiff, claiming fifty per cent as first money, notified the defendant that he would not accept the check as second money, but would credit it on account. The check was cashed, and the defendant made no reply.

*Held;* that, under the circumstances of this case, the plaintiff cannot be considered as having received the check in settlement of the claim sued for.

ON REPORT.

This was an action brought in the Superior Court for Kennebec County to recover a trotting premium which the plaintiff claimed had been won by his horse "Combination," and reported by the presiding justice to the law court. It was not denied that the contract was valid under the Stat. 1891, c. 70, which authorizes competition for such premiums.

The case is stated in the opinion.

(Declaration.)

In a plea of the case, for that the said defendant is a corporation, duly incorporated under the laws of the State of Maine, and is the owner and controller of the Monroe Trotting Park Company, and all the appurtenances thereto belonging; that during the year A. D. 1894, to wit, July 4th, A. D. 1894, the defendant advertised for and gave a race meeting, for which purpose, among other things, was the purpose of its incorporation; that at said meeting it offered to the public in general, and owners of horses eligible to the 2.30 class, at the gait of trotting, a purse or premium of $200, the conditions of said race being that a horse winning three heats out of not less than five, should have 50 per cent of the purse thus offered for contest of speed, at the trot on said course.

The plaintiff avers that he was on said 4th day of July, A. D. 1894, and for some time prior thereto, the owner of a horse, known by the name of "Combination," and that said horse was eligible to the 2.30 class trotting; that the plaintiff in good faith, and in strict compliance with all the rules and regulations of the defendant, for its trial and contest, to be held on its park at Monroe, Maine, duly entered said horse "Combination" in the 2.30 class, so-called, of said exhibition, to contend with other horses for the purse or premium of $200 offered as aforesaid by the defendant; that he also paid the defendant, as required by the rules and conditions of said contest of speed, the sum of $20, or, as is commonly known, 10 per cent entrance fee; that said defendant received said $20, entered the name of said horse "Combination" in its list, among the other horses contesting for said purse, on said

4th day of July, A. D. 1894; that on said 4th day of July, A. D. 1894, at the defendant's said race course at said Monroe, the plaintiff's said horse "Combination" started in the 2.30 class in said race or contest of speed, and was driven in said race by the plaintiff; and the plaintiff charges that his said horse "Combination" was able in said race to show, and actually did make the greatest and fastest flight of speed in three heats of said contest viz, the sixth, seventh and eighth heats thereof, having trotted faster in each of said three heats than any other horse contending for said purse.

And the plaintiff avers that his said horse "Combination" won the sixth, seventh and eighth heats of said race; and that Bancroft H. Conant, Chas. E. Lane and R. A. Robinson, agents and servants of the said defendant, were the judges, in the judges' stand, of said race and contest, and that when the last heat of said race had been trotted, the said judges, acting within the scope of their lawful authority as agents and servants of the said defendant, decided, announced and declared from the judges' stand of said race-course, that the plaintiff's said horse "Combination" had won said last heat and had won the race and first money, the plaintiff's said horse "Combination" having won two previous heats, which decision of said judges thereby entitled the plaintiff to have and receive of the said defendant the sum of $100, the same being 50 per cent of said purse of $200; that after said exhibition of speed had terminated, and said horse "Combination" had merited and was entitled to and had won said $100 of said purse or premium of $200, the defendant through said judges, its servants and agents, and for whose illegal acts the defendant is, and on said 4th day of July, A. D. 1894, was liable, wrongfully, unlawfully, and without any reasonable or just grounds therefor, and without the knowledge or consent of the plaintiff, took away from plaintiff's said horse "Combination" said last heat and race and said first money, and awarded and agreed to give the said race and first money, viz, $100, to a mare called "Hipponna," which mare was one of the horses duly entered and started in said 2.30 class and race, in competition with said horse "Combination" and other horses.

Whereby by reason of said illegal and wrongful acts of the said defendant, the said plaintiff's horse "Combination" was declared by said judges to have won only second money, or 25 per cent of said purse or premium of $200, viz, the sum of $50. Whereas, in truth and in fact, said horse "Combination" did win and he was entitled to $100, the same being 50 per cent of said purse of $200; by reason whereof the plaintiff has lost said sum of $100. And the plaintiff avers that he duly demanded payment of said sum, of · said defendant, on July 4th, A. D. 1894.

*Edmund F. and Appleton Webb*, for plaintiff.

*J. and J. Williamson, Jr., and L. A. Burleigh*, for defendant.

SITTING:   PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

SAVAGE, J. In this case, the plaintiff sues to recover the balance of an unpaid trotting premium, which he alleges his horse won in a horse-race conducted by defendant, July 4, 1894. The defendant claims that the wrong society has been sued; that the plaintiff's horse did not win the race and "first money," but did win "second money"; and that the plaintiff having received the sum of thirty dollars sent to him as "second money" must be deemed to have received it in full settlement of his claim against the corporation conducting the race.

I. The evidence of the plaintiff tends to show that it was the defendant corporation which conducted the race. The defendant offered no evidence upon this point, except an abstract from the printed report of the secretary of the Maine Board of Agriculture, as follows: "Name of society, Waldo and Penobscot. President, M. C. Chapman of Newburg Village. Secretary, E. H. Nealley of Monroe. Treasurer, F. I. Palmer of Monroe." This evidence, if admissible, had no tendency to rebut the plaintiff's claim that the defendant corporation was the party liable in this case. That there existed a "Waldo and Penobscot" society may be true, and still this race may have been conducted by the defendant.

II.   The undisputed testimony shows that at the end of the seventh heat the plaintiff's horse "Combination" and another horse "Hipponna" had each won two heats; that during the eighth heat, it being nearly dark, the judges caused patrols to watch the trotting upon that portion of the track where the judges themselves could not clearly see; that "Combination" came under the wire two or three lengths ahead of "Hipponna"; that the patrols reported to the judges that there had been no "running," "nothing wrong"; that two of the three judges, in the presence of the drivers, of whom plaintiff was one, said:  "We shall give 'Combination' first, and 'Hipponna' second"; that afterwards, and after the drivers had gone away, the judges announced to the public their decision that "Hipponna" had won the race and "first money," and "Combination," second.   Is this last decision binding upon the plaintiff?   In the absence of proof of fraudulent practices, we think it should be.   The "judges" constituted the tribunal to which the plaintiff submitted when he entered his horse for the race, and to their decision, if honestly given, he should bow.

In a letter, written by defendant's secretary to plaintiff's counsel, there is an allusion to an appeal made to the "National Trotting Association," and the decision of that body; but no evidence was offered to show such appeal, or the rules under which it was taken, or its effect.

The plaintiff claims that the judges were, as to him, the defendant's servants and agents, and that the decision in favor of "Hipponna" was caused and procured by the false and fraudulent conduct of one of them, Robinson.   The other two were called as witnesses by the plaintiff, and their testimony, if believed, certainly tends to support the claim of the plaintiff, and their testimony is uncontradicted.   It will not be profitable to analyze the testimony at length.   It appears that the "stand" was crowded, and that the judges did not meet in consultation, but that the third judge assumed to communicate between the others, and falsely informed each of the two, who were witnesses, that the other and himself had decided to give the race to "Hipponna,"

and, that each of these two was thereby led to believe that a majority of the three had decided in "Hipponna's" favor; and relying upon the information received, each submitted to the supposed majority; and thereupon the public decision was announced.

Such conduct was fraudulent, and the decision procured thereby should not be permitted to bar the plaintiff from recovering a premium which his horse clearly won.

III. The defendant sent the plaintiff a check for thirty dollars for "second money" in this race. The plaintiff notified defendant that he would not accept it as "second money", but would credit it on account. He cashed the check. No reply appears to have been made.

We do not think, under the circumstances, that the plaintiff can be considered as having received the check in settlement of the claim sued.

The premium offered was $200. The horse winning "first money" was entitled to fifty per cent. Plaintiff claims only fifty dollars, deducting the entrance fee twenty dollars, and the cash received, thirty dollars. Demand was made July 4, 1894.

*Judgment for plaintiff for fifty dollars*
*and interest from July 4, 1894.*